IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER BRANDON LEONE,<br><br>Plaintiff,<br><br>v.<br><br>RESIDENT VERIFY, LLC,<br><br>Defendant. | Civil Action No.: 3:23-cv-12342<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Christopher Brandon Leone ("Plaintiff" or "Mr. Leone") by and through his counsel brings the following Complaint against Resident Verify, LLC ("Defendant" or "ResidentVerify") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of tenant screening reports that Defendant published to Plaintiff's potential landlords, which falsely portrayed that Plaintiff had a civil judgment for eviction against him.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also

1

known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published inaccurate tenant screening reports to Plaintiff's prospective landlords, which included a civil eviction record and judgment that did not belong to Plaintiff.

4. The record reported by Defendant *does not* belong to Plaintiff.

5. Plaintiff's prospective landlords denied Plaintiff's housing applications after receiving the tenant screening reports from Defendant, in which Defendant published the civil eviction record and judgment belonging to another consumer.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records pertaining to the civil eviction records prior to publishing the information to Plaintiff's prospective landlords.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9. Defendant's inaccurate reports cost Plaintiff the ability to rent the apartment units that were suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12. Christopher Brandon Leone ("Plaintiff" or "Mr. Leone") is a natural person residing in Avoca, Michigan and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant Resident Verify, LLC ("Defendant" or "ResidentVerify") is a Utah limited liability company doing business throughout the United States, including the State of Michigan and in this District, and has a principal place of business located at 4205 Chapel Ridge Road, Lehi, Utah 84043. ResidentVerify can be served through its registered agent, Corporation Service Company, located at 15 West South Temple, Suite 600, Salt Lake City, Utah 84101.

14. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

5

21.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

22.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the ones Defendant prepared in Plaintiff's name.

23.     The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

24.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

25.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

29. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

30. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

31. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

32. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

33. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

34. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

35. Appropriate quality control review of Plaintiff's reports would have made clear that Defendant was reporting information belonging to another consumer.

36. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

# FACTS

## A. Plaintiff Applies for Apartments with Aspen Grove Apartments and Westmoore Apartments

37. For some months now, Plaintiff's residential circumstances have not been ideal; he has been residing in his parents' home, but he was keen on moving on and moving out, as were his parents.

38. Most recently, however, matters have come to a head, and Plaintiff was more determined than ever to find housing of his own.

39. Accordingly, in or about July 2023 Plaintiff began searching for a new apartment in Michigan. Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, and within his budget.

40. As well, a suitable apartment would be within reasonable range and distance of his place of employment, ZF, a company that manufactures and assembles auto parts used in various automotive vehicles, such as Dodge and Chrysler.

41. In or about mid-July 2023, Plaintiff submitted housing applications to two apartment complexes – Aspen Grove Apartments ("Aspen Grove") and Westmoore Apartments ("Westmoore").

42. Both of the applied-for apartments, Aspen Grove and Westmoore, are managed by the same property management company.

43. Both of the applied-for apartments, Aspen Grove and Westmoore, use ResidentVerify to conduct background checks on their prospective tenant.

44. Plaintiff applied to the Aspen Grove and Westmoore apartments because they met his qualifications of being safe, clean, affordable and reasonably located nearer to his place of employment. Further, they had received positive reviews.

**B.  Defendant Published Inaccurate Tenant Screening Reports to Aspen Grove and Westmoore**

45. Aspen Grove and Westmoore contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

46. On July 16, 2023, Defendant sold a tenant screening report about Plaintiff to Aspen Grove, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

47. Upon information and belief, on or about the same date, July 16, 2023, Defendant sold a tenant screening report about Plaintiff to Westmoore, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

48. The tenant screening reports, identified as Background Screening Reports by Defendant, are a consumer reports regulated by the FCRA.

49. Within that tenant screening report sold to Aspen Grove, Defendant published inaccurate information about Plaintiff.

50. Specifically, the "Evictions, Filings, & Public Records" section of the tenant screening report included the following civil court record (the "Eviction Record"), purportedly discovered after a "NATIONWIDE" search:

**Evictions, Filings & Public Records**

| | |
|---|---|
| RESULTS | 1 Record(s) Found |
| NAME SEARCHED | Christopher Leone |
| SEARCH DATE | Jul 16, 2023 04:06 |
| SEARCH SCOPE | |
| JURISDICTION | NATIONWIDE |

**PORT HURON HOUSING COMMISSION VS LEONE, CHRISTOPHER**

**Defendant:**

| | |
|---|---|
| Full Name: | LEONE, CHRISTOPHER |
| Address: | 375 NORTH ST APT A4 |
| City, State, Zip: | YALE, MI, 48097 |

**Plaintiff:**

| | |
|---|---|
| Full Name: | PORT HURON HOUSING COMMISSION |

**Judgment Information:**

| | |
|---|---|
| Case Number: | 19P06871LT |
| Case Type: | LT |
| Case Disposition: | LANDLORD/TENANT FILING |
| Court Location: | 72nd District Court - Marine City |
| Reference Id: | c3akkngc7fntn19qt3ofjge94 |
| Judgment Amount: | $0 |
| Filed Date: | 11/01/2019 |

11

51. The Eviction Record, Case No. 19P06871LT, is located in St. Clair County District Court, Michigan.

52. The Eviction Record published by Defendant about Plaintiff to Aspen Grove *did not* belong to Plaintiff.

53. Defendant published inaccurate information about Plaintiff. The Eviction Record should not have been included in any tenant screening report about Plaintiff.

54. Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Aspen Grove, Defendant failed to consult widely available public court records in St. Clair County District Court, Michigan, which indicate that the Eviction Record did not belong to Plaintiff and was not associated with Plaintiff.

55. A cursory review of the widely available underlying public court records confirms that the Eviction Record belonged to an unrelated woman, Christina Leverenz. Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the rental history of Christina Leverenz into that same report.

56. The discrepancies that should have caused Defendant to realize that Plaintiff is not the same person as Christina Leverenz include the following:

    (a) Plaintiff's legal name is "Christopher Brandon Leone" but the name of the individual subject to the Eviction Record is

12

        identified in the underlying public court records as Christina Leverenz;

(b)    Plaintiff's gender, which was provided to Defendant prior to publishing the tenant screening report, is male, yet the underlying public court records indicate that Christina Leverenz is female;

(c)    Plaintiff's address history confirms that he did not live at the address that was subject to the civil eviction record, 375 North St, Apt. A4, Yale, Michigan at the time the landlord/tenant civil case was filed on November 1, 2019; and,

(d)    Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Christina Leverenz as confirmed by the underlying public court records.

57.    Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen some of the above-noted obvious discrepancies between Christina Leverenz and Plaintiff.

58.    The sole reason the inaccurate Eviction Record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Aspen Grove.

59. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing Eviction Record belonged to Christina Leverenz with a different name than Plaintiff, a different gender, a different address, and a different Social Security Number.

60. Upon information and belief, the tenant screening report published to Westmoore was identical to the report that Defendant published to Aspen Grove and contained the same inaccurate Eviction Record.

61. In preparing and selling consumer reports about Plaintiff, wherein Defendant published to Plaintiff's prospective landlords inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

C. **Aspen Groves and Westmoore Each Deny Plaintiff's Housing Applications**

62. On or about July 18, 2023, Plaintiff was notified by Westmoore that his housing application was denied. Upon information and belief, Plaintiff's housing application was denied as a direct result of the Eviction Record reported by Defendant.

63. On or about July 20, 2023, Plaintiff was notified by Aspen Grove that his housing application was denied as a direct result of the Eviction Record reported by Defendant.

14

64. Indeed, the ResidentVerify background report furnished by Defendant to Aspen Grove indicated, both in large red text and also in a large red circle, "FAIL," which the same report further indicated was the result of the reporting of the Eviction Record.

65. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report published to Aspen Grove and was shocked and humiliated upon reviewing and realizing that the Eviction Record of Christina Leverenz was published in the tenant screening report Defendant sold about Plaintiff to Aspen Grove.

66. Plaintiff was very panicked, confused, and concerned about the impact of the records of Christina Leverenz being reported on the tenant screening report – specifically, the impact of the same on his future.

67. Specifically, Defendant matched Plaintiff and Christina Leverenz and published the Eviction Record of Christina Leverenz onto the tenant screening reports about Plaintiff and sold those reports to Plaintiff's prospective landlords. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's tenant screening reports to Aspen Grove and Westmoore, but Defendant failed to perform even a cursory review of such information.

68. Defendant's false reports cost Plaintiff housing opportunities that met his needs, including those attendant to affordability, size, location, and safety.

69. Plaintiff was looking forward to living at Aspen Grove or Westmoore because those were in a safe neighborhood and were within his budget.

70. Additionally, the Aspen Grove and Westmoore apartments were suitably located such that his commute from those apartments to his place of employment would be reduced by an estimated 20 minutes, thus reducing his overall employment commute times by an estimated 40 minutes per day.

71. Due to Defendant's unreasonable procedures in the first place, Plaintiff has been unable to extricate himself from his current housing circumstances and he continues to reside at his current residence.

72. Due to Defendant's actions, Plaintiff has been deterred from applying to additional apartment rentals, and has largely refrained from doing so, out of a legitimate fear that the Eviction Record would resurface and cause him an apartment denial.

73. Needless to say, Plaintiff's inability to secure alternative housing has only increased and exacerbated the discomfort, acrimony, anxiety, and tension at his current residence, to the detriment of Plaintiff's psychological and emotional wellbeing.

74. At times, Plaintiff is forced to sleep outside in his vehicle so as to avoid the aforementioned discomfort, acrimony, anxiety, distress, and tension that is present at his current residence.

75. Due to Defendant's actions, Plaintiff has suffered from headaches, experienced depressive attitudes, and lost sleep.

76. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

77. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

78. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

79. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

80. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

81. At all times pertinent hereto, the above-mentioned tenant screening reports were each a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

83. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

84. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: September 14, 2023         **CONSUMER ATTORNEYS**

*/s/ Levi Y. Eidelman*
Levi Y. Eidelman, NY Bar No. 5742499
300 Cadman Plaza West
12th Floor, Suite 12049
Brooklyn, NY 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff*
*Christopher Brandon Leone*